IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ZACHARY WOOTEN,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br>a Delaware corporation,<br><br>Defendant. | CV 16-139-M-DLC-JCL<br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Zachary Wooten has filed a renewed motion for preliminary injunction or, in the alternative, a temporary restraining order, to preclude Defendant BNSF Railway Company from proceeding with the investigation of union representative Mark Voelker, which is set to take place on March 22, 2017. The motion should be denied for the reasons set forth below.

**I.      Background**

Wooten brings this action against BNSF under the Federal Employers' Liability Act, the Federal Rail Safety Act, and the Federal Locomotive Inspection Act, to recover damages for an on-the-job injury he allegedly suffered in July 2015 while working as a crew member on a BNSF locomotive. Approximately two

months after his alleged injury, BNSF issued Wooten a Notice of Investigation informing him that it was initiating an investigation for the purpose of determining whether he had been dishonest in his injury report. Wooten was represented during the investigation by Voelker, the local union chairman.

In the course of representing Wooten, Voelker obtained a Locomotive Inquiry for the locomotive on which Wooten claims he was injured. Voelker forwarded that information to Wooten's attorney, who Voelker knew was representing Wooten in his lawsuit against BNSF. Pursuant to his discovery obligations, Wooten notified BNSF as to the substance of his communications with Voelker. BNSF then informed Voelker that it was initiating an investigation against him for allegedly disclosing confidential BNSF business information concerning a BNSF locomotive to an unauthorized person. (Doc. 21, at 6). Voelker's investigation hearing is currently scheduled for March 22, 2017. Wooten has moved for a preliminary injunction or temporary restraining order to prevent BNSF from proceeding with the investigation.

## II. Discussion

The purpose of a preliminary injunction is to preserve the status quo and

prevent the "irreparable loss of rights" before a final judgment on the merits,[1] while the purposes of a temporary restraining order is to preserve the status quo until a preliminary injunction hearing. See *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006). Temporary restraining orders and preliminary injunctions are extraordinary remedies that are awarded not as a matter of right, but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

The standards for a temporary restraining order and a preliminary injunction are the same. To obtain either form of relief, a plaintiff must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. If a plaintiff raises "serious questions going to the merits" and demonstrates "a balance of hardships that tips sharply" in his favor, injunctive relief is proper "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). If any one of the four factors identified in *Winter*

---

[1] *Textile Unlimited, Inc. v. A. BMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001).

is not satisfied, the court need not consider the three remaining factors. See *Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

Because it is dispositive, the Court begins with the issue of irreparable harm. An adequate showing of irreparable harm has been described as the "single most important prerequisite for the issuance of a preliminary injunction" or temporary restraining order. See 11A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2948.1 (2d ed. 1995). "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy." *Arizona Dream Act Coal v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). See also *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("Irreparable injury is that which is substantial and not compensable by monetary damages or other legal remedies."). To prevail on a motion for preliminary injunction or temporary restraining order, a plaintiff "must establish that irreparable harm is likely, not just possible," if the relief sought is not granted. *Cottrell*, 632 F.3d at 1131. "Speculative injury does not constitute irreparable injury," and cannot be the basis for a finding of irreparable harm. *Caribbean Marine Servs.Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

Here, Wooten has not made the required showing of irreparable harm.

Wooten first argues that if BNSF is allowed to conduct investigations, possibly leading to the termination of union officers and other employees who assist a coworker in prosecuting claims under the FELA or the FRSA, it will have a major chilling effect on such cooperation and make it harder for plaintiffs to seek redress for their injuries. (Doc. 31, at 12). For support, Wooten relies on declarations provided by BNSF employees stating that if the railroad is allowed to investigate and discipline union leadership for assisting union members who have filed injury claims against the railroad, railroad employees will be considerably less likely to assist in such cases. (See Doc. 16, at 3; Doc. 18, at 2). Wooten contends that allowing BNSF to pursue such investigations would directly violate § 60 of the FELA, which voids "[a]ny contract, rule, regulation, or device whatsoever" that prevents railroad employees from "furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee."[2] 45 U.S.C. § 60.

The possibility that allowing BNSF to pursue its investigation against

---

[2] To the extent Wooten claims that allowing BNSF to investigate Voelker will violate § 60 of the FELA, he is unlikely to succeed on the merits. Section 60 "applies only to non-FELA claimants, who help other employees file FELA claims." *Bielicke v. Terminal Railroad Ass'n*, 30 F.3d 877, 878 (9th Cir. 1994). This means that any claim under § 60 is Voelker's to make. Wooten is a FELA claimant, and cites no authority for the proposition that he should be allowed to pursue a claim under § 60 on Voelker's behalf.

Voelker may have a general chilling effect and deter union leaders from assisting union members with injury claims in other cases is simply too speculative to support a temporary restraining order or preliminary injunction. Even if Wooten's prediction is correct, such a future chilling effect would have no impact on the party seeking injunctive relief in this litigation. The irreparable harm analysis focuses on the harm to the party seeking injunctive relief, not on potential harm to third parties. See *Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish...that *he is* likely to suffer irreparable harm in the absence of preliminary relief.") (emphasis added). The fact that union leaders might be reluctant to assist other injured employees with potential future claims does not in any way impair Wooten's ability to pursue his own claims against BNSF, and is simply insufficient to support a temporary restraining order or preliminary injunction.

To the extent Wooten maintains that BNSF's investigation of Voelker may irreparably harm Wooten's case against the railroad, the Court is not convinced. Wooten points out that Voelker has put BNSF on notice that he has a potential FELA claim of his own, and argues BNSF is thus motivated to terminate Voelker's employment. Wooten is concerned that if BNSF is allowed to proceed with its investigation, it will use the threat of discipline, including termination, to

dissuade Voelker from providing evidence or otherwise assisting with the prosecution of Wooten's claims.

This argument is just as speculative as the first. While Voelker has submitted a declaration stating that he thinks allowing BNSF to investigate union leadership for assisting union members who have filed injury claims against the railroad will have a general chilling effect, he says nothing about withdrawing his cooperation or refusing to testify in this case if BSNF proceeds with the investigation on March 22, 2017. Even assuming Voelker refuses to cooperate, Wooten has other remedies available. If Voelker refuses to testify at trial, for example, Wooten can presumably compel his attendance with a subpoena issued pursuant to Federal Rule of Civil Procedure 45. And if Voelker alters his testimony, he will be subject to cross-examination and impeachment by Wooten's counsel. Because Wooten has not shown that other remedies are inadequate, he has not established the likelihood of irreparable harm as required for a temporary restraining order or preliminary injunction.

Finally, Wooten suggests that allowing BNSF's investigation to proceed will likely harm Voelker's FELA action because the railroad may use any discipline it imposes to suggest to the jury that his wage and economic damages are less than he alleges. This too is a speculative argument, which assumes not

only that Voelker will be disciplined as a result of the investigation but also that BNSF will succeed in using evidence of those disciplinary proceedings to Voelker's detriment at the trial of his FELA case. Wooten's allegations are too speculative to establish irreparable harm. But even more importantly, Wooten is not the one who would be harmed by such a turn of events. As the party seeking preliminary injunctive relief, Wooten must demonstrate that he will likely suffer irreparable harm if BSNFS is allowed to proceed with its investigation. Any alleged harm to a third party like Voelker is not relevant for purposes of the irreparable harm inquiry. See e.g. *Jones v. District of Columbia*, 177 F.Supp.3d 542, 546 n. 3 (D.D.C. 2016) (explaining that "the irreparable harm prong of the injunctive relief calculus only concerns harm suffered by the party or parties seeking injunctive relief," and "any alleged harm to third parties is properly addressed under the public interest prong of the injunctive relief calculus").

Because Wooten has not established the likelihood that he will suffer irreparable harm if a preliminary injunction or temporary restraining order is not issued, the court need not consider the three remaining *Winter* elements and his motion should be denied.

### III. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Wooten's motion for a preliminary injunction or temporary restraining order be DENIED.

The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel on or before March 20, 2017. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full statutory period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

DATED this 16th day of March, 2017

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge