IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ZACHARY WOOTEN,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br>a Delaware corporation,<br><br>Defendant. | CV 16-139-M-DLC-JCL<br><br><br>ORDER |

This matter comes before the Court on Defendant BNSF Railway Company

("BNSF")'s motion to bifurcate pursuant to Federal Rule of Civil Procedure 42(b).

For the reasons set forth below, BNSF's motion is denied.

I.  **Background**

Plaintiff Zachary Wooten alleges he suffered an on-the-job injury on July

31, 2015 while working as a crew member on a BNSF locomotive.  Wooten claims

he injured his wrist while exiting the locomotive to perform a roll-by inspection

because a latch on the door failed to open properly. Wooten alleges that his injured

wrist gave way when he tried to climb back onto the locomotive, causing him to

fall and injure his wrist more severely.  According to Wooten, he promptly

notified BNSF of his injury and reported a hazardous safety condition with respect

to the locomotive latch.

In the weeks that followed, BNSF conducted an investigation for the purpose of determining whether Wooten had been dishonest in his injury report. As a result of its investigation, BNSF determined that Wooten had been dishonest in reporting his injury and terminated his employment on September 29, 2015.

Wooten commenced this action against BNSF in October 2016. He alleges he was injured as a result of BNSF's negligence, and brings a personal injury claim under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. and Locomotive Inspection Act, 49 U.S.C. § 20701 ("LIA"). Wooten also alleges that BNSF retaliated against him for reporting his injury and a hazardous safety condition, and a brings a retaliation claim under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. He seeks compensatory and other damages, including an award of punitive damages on his FRSA claim.

BNSF has moved to bifurcate the trial of Wooten's FELA and LIA claim (hereinafter "FELA claim") from his FRSA claim, and requests a second phase for the determination of punitive damages on the FRSA claim if necessary.

## II.  Legal Standards

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party

claims." Whether to bifurcate proceedings for any of the reasons listed in Rule 42(b) is within the broad discretion of the trial court. *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1088 (9th Cir. 2005); *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). "The burden is on the moving party to show bifurcation is warranted." *Burton v. Mountain West Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 612 (D. Mont. 2003).

In determining whether bifurcation is appropriate, the Court considers such "factors as convenience, prejudice, judicial economy, and whether the issues are clearly separable..." *Bowoto v. Chevron Corp.*, 2008 WL 2074401 (N.D. Cal. 2008) (citing Schwartz, Tashima & Wagstaffe, Federal Civil Procedure Before Trial 16:160.4 (1999); *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982)); *M2 Software, Inc.*, 421 F.3d at 1088. Of these factors, avoiding prejudice is the most important. See *Martin v. Bell Helicopter* Co., 85 F.R.D. 654, 658 (D. Colo. 1980); *LaitramCorp. v. Hewlett-Packard Co.,* 791 F.Supp. 113, 114 (E.D. La. 1992).

## III.   Discussion

BNSF argues these factors weigh in favor of bifurcating the trial of Wooten's FELA and FRSA claims. First, BNSF takes the position that bifurcation is necessary to prevent it from suffering undue prejudice. Generally speaking, Wooten's FELA claim requires proof that he was injured as a result of BNSF's alleged negligence, while his FRSA claim requires proof that BNSF retaliated

against him for reporting his injury and an allegedly hazardous safety condition.

BSNF argues that evidence of its alleged retaliatory conduct is not relevant to the

question of whether it acted negligently, and fears it will be prejudiced if evidence

of its alleged FRSA violation is allowed during the trial of Wooten's FELA claim.

BNSF maintains the only effective way to guarantee that it receives a fair and

impartial trial is to try Wooten's FELA and FRSA claims separately.

Contrary to BNSF's argument, the Court finds that any possibility of

prejudice can be reduced or eliminated by the use of limiting instructions to the

jury, explaining how and for what purposes certain evidence may be considered.

See *Frost v. Burton*, 218 F.Supp.3d 1122, 1131 (D. Mont. 2016) (denying motion

to bifurcate trial of FELA claim into two phases for liability and punitive damages,

and finding that any prejudice could be avoided by the use of a limiting

instruction); *Burton v. Mountain West Farm Bureau Mut. Ins.*, 214 F.R.D. 598,

613 (D. Mont. 2003). Appropriate limiting instructions will adequately ensure

that the jury understands that a finding of liability under FELA does not mean that

BNSF is also liable under FRSA. See *Powell v. Union Pacific R. Co.*, 2013 WL

497636 *4 (E.D. Cal. Feb. 7, 2013) (limiting instructions sufficient to ensure the

jury understands that a finding of liability under FELA does not necessitate a

finding in plaintiff's favor on his wrongful termination claim).

Second, BSNF argues that bifurcation is appropriate because Wooten's

FELA and FRSA claims involve distinct elements, defenses, burdens of proof, and remedies. BNSF takes the position that the legal and factual distinctions between the two claims make separate trials the logical way to present those claims to the jury. For support, BNSF relies on *Lodgson v. BNSF Railway Company*, 2017 WL 1411464 *2 (D. Neb. March 21, 2017), in which the court bifurcated the plaintiff's FELA and FRSA claims in part because they involved distinct elements and were easily separated.

While it was within the *Lodgson* court's discretion to order bifurcation, it could just as easily have reached the opposite conclusion. Juries are routinely asked to resolve multiple claims involving distinct elements, defenses, and burdens of proof in a single case. At the upcoming trial in this case, the Court will instruct the jury on the distinct elements, defenses, and burdens of proof applicable to each of Wooten's claims. Thus, the fact that Wooten's FELA and FRSA claims are legally distinct in many respects does not necessarily mean they are better tried separately.

Moreover, as Wooten correctly points out, his FELA and FRSA claims are factually related to some degree. BNSF terminated Wooten's employment based on its determination that he lied in his injury report, and maintains it has evidence showing that Wooten injured his wrist before reporting to work on July 31, 2015. BNSF's preliminary pretrial statement suggests it will present that evidence in

defense of both Wooten's FELA and FRSA claims.   (Doc. 24, at 5-6).  Thus,

contrary to BNSF's argument, there may well be some overlap between the issues

and evidence presented at the trial of Wooten's FELA an FRSA claims.

Third, BNSF maintains bifurcation is warranted because separate trials

would promote judicial economy and convenience.   BNSF contends that if it

obtains a defense verdict on Wooten's FELA claim, it cannot be held liable on the

FRSA claim and there would be no need for a second trial.  According to BSNF, if

the jury finds BNSF was not negligent with respect to the locomotive door latch

and did not cause Wooten's injury, then Wooten could not have engaged in a

protected activity under the FRSA by reporting a work-related injury or hazardous

safety condition.  BNSF similarly argues that if the liability phase of trial on

Wooten's FRSA claim ends in a defense verdict, no punitive damages phase

would be necessary.  Finally, BNSF anticipates that the FELA and FRSA trials

would involve different witnesses and separate defense counsel, and maintains that

trying the claims together would double the amount of time that each juror would

have to devote to hearing the case.

Even assuming BNSF is correct that there would be no need to try the

FRSA claim if it obtains a defense verdict on the FELA claim, the Court is not

persuaded that bifurcation is warranted.  As put by the *Powell* court in rejecting a

similar argument regarding the threshold nature of one claim, BNSF's argument

"is one that could be made in every case where there is a potentially dispositive issue." *Powell*, 2013 WL 497636 *3. It is just as likely that bifurcation would result in two completely separate trials with a separate phase for the determination of punitive damages. The Court is not inclined to order bifurcation simply because it is possible that the jury will find in BNSF's favor on Wooten's FELA claim.

Fourth, BNSF argues bifurcation is necessary to avoid confusing the jury. BNSF suggests that if Wooten's FELA and FRSA claims are not tried separately, the jury will be confused as to what evidence and testimony is relevant to each claim. The Court can eliminate the risk of such confusion, however, by properly instructing the jury on the law as it relates to each claim and using an appropriate verdict form.

For these reasons, the Court finds that BNSF has not met its burden of demonstrating that bifurcating the trial of Wooten's FELA and FRSA claims is warranted.

BNSF also asks the Court to bifurcate the liability and punitive damages phases of trial on Wooten's FRSA claim, citing essentially the same reasons. BNSF first argues that bifurcation is necessary to prevent irrelevant evidence regarding punitive damages from tainting the jury's determination of liability and compensatory damages, thereby reducing the risk of undue prejudice. BNSF further maintains that bifurcation will promote judicial economy and convenience

7

because if Wooten does not prevail on liability, there will be no need for a punitive damages phase. For support, BNSF cites several out-of-district cases in which courts have bifurcated punitive damages from liability, including one case involving FELA and FRSA claims. See *Bliss v. BNSF*, 2013 WL 5570231 *18 (D. Neb. Oct. 9, 2013).

In a recent FRSA case from this district, however, United States District Court Judge Donald W. Molloy reached the opposite conclusion and denied BNSF's motion for a bifurcated trial on liability and punitive damages. *Frost v. BNSF Railway Co.*, 218 F.Supp.3d 1122, 1130-31 (D. Mont. 2016). Judge Molloy found that any prejudice could be avoided by using a limiting instruction, and pointed out that the evidence supporting BNSF's liability and the potential award of punitive damages was essentially the same, namely "evidence which tends to show BNSF retaliated against [the plaintiff] after he engaged in protected conduct." *Frost*, 218 F.Supp.3d at 1131. Judge Molloy also found that any considerations of judicial economy and convenience were outweighed by "the potential time and cost involved in running two consecutive trials." *Frost*, 218 F.Supp.3d at 1131. The Court finds Judge Molloy's reasoning in *Frost* persuasive.

Having weighed all of the relevant considerations, and keeping in mind that the paramount concern must be providing all parties with a fair and impartial trial,

the Court concludes that BNSF has not met its burden of establishing that bifurcation is necessary.

## IV.   <u>Conclusion</u>

For the reasons set forth above,

IT IS ORDERED that BNSF's motion to bifurcate is DENIED.

DATED this 17th day of October, 2017.

_____
Jeremiah C. Lynch
United States Magistrate Judge