IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ZACHARY WOOTEN,<br><br>                Plaintiff,<br><br>    v.<br><br>BNSF RAILWAY COMPANY,<br><br>                Defendant. | CV 16-139-M-DLC-JCL<br><br>ORDER |

During the motion hearing on May 22, 2018 and May 23, 2018, the Court made several rulings from the bench. This Order memorializes the Court's oral rulings on the following motions: (1) Wooten's motion to exclude or limit expert testimony based on timeliness and sufficiency of expert disclosure (doc. 151); (2) BNSF's motions in limine concerning Wooten's expert witnesses (doc. 164); (3) BNSF's motions in limine (doc. 166); (4) Wooten's motions in limine (doc. 168).

## I.     Plaintiff's Motion to Exclude or Limit Expert Testimony (Doc. 151)

Wooten moves pursuant to Fed. R. Civ. P. 26 and 37 to exclude or limit testimony by BNSF experts Brian Weaver and Grant Fredericks based on untimely and/or expert reports and disclosure.

An expert witness disclosure must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them; the data or other information considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B). Supplementation is required "if the party learns that in some material respect the disclosure…is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

BNSF timely served Weaver's report with its liability expert witness disclosure on November 29, 2017, designating Weaver and Fredericks as retained experts and providing their expert reports.

BNSF served a supplemental report and liability expert witness disclosure for Weaver on March 19, 2018. Wooten argues Weaver's supplemental report is, in substance, a rebuttal expert witness report offered by BNSF to rebut the opinion of Wooten's retained expert, Dr. Toby Hayes. Because rebuttal expert witness reports were due no later than December 29, 2017, Wooten argues Weaver's March 19, 2018 report is untimely. Wooten asks the Court to strike Weaver's March 19, 2018 report and limit Weaver's testimony to the opinions contained in his November 29, 2017, report. In response, BNSF argues that Weaver's supplemental report is not intended solely to contradict or rebut Hayes' report, but rather to clarify his own opinions in light of Hayes' deposition testimony.

On March 20, 2018, BNSF served a supplemental liability expert witness disclosure for its forensic video analyst, Fredericks, stating that in addition to his expected testimony consistent with his report and the attached videos, he will testify to the foundation and authenticity of the videos produced in discovery. Wooten argues that this supplemental disclosure is deficient because it was not accompanied by a written report, and untimely because it constitutes rebuttal testimony subject to the December 29, 2017, deadline for rebuttal expert witness reports. As a result, Wooten asks the Court to preclude Fredericks from testifying as to the foundation and authenticity of the videos. In response, BNSF argues that the fact-based foundational testimony Fredericks may provide at trial does not constitute expert opinion subject to the Rule 26(a)(2) reporting and disclosure requirements. BNSF contends Wooten's objections to the foundation and authenticity of the video are properly addressed at trial.

At the motion hearing on May 22, 2018, the Court made clear that all expert witness testimony for both parties, including testimony by BNSF experts Weaver and Fredericks, will be limited to the opinions set forth in their initial reports, and proper rebuttal reports. This limitation applies equally to Wooten's expert Levoy Little, who BNSF argues should not be allowed to testify to opinions expressed at his deposition but not contained in his written report. (Doc. 138). With this understanding, Wooten's motion is effectively moot.

## II. BNSF's Motions in Limine Concerning Plaintiff's Expert Witnesses (Doc. 164)

### A. Gavalla

BNSF moves in limine to prohibit Wooten from introducing George Gavalla's proposed opinion testimony as set forth in his Safety Analysis Report dated November 28, 2017. BNSF argues that Gavalla's proposed testimony lacks proper foundation and consists of improper legal opinions and conclusions, improper medical opinions, and unfounded opinions with regard to federal laws and regulations and BNSF's internal policies, rules and procedures.

Consistent with the Court's ruling from the bench at the motion hearing on May 23, 2018, BNSF's motion is granted in part and denied in part as follows:

(1) BNSF agreed that Gavalla can testify within the parameters of *Frost v. BNSF Ry. Co.*, 218 F.Supp.3d 1122 (D. Mont. 2016) as to safety rules and regulations, the purpose of the internal control plan, the importance of injury reporting, and the negative effects of underreporting. (Doc. 198, at 6). To the extent BNSF moves to prohibit Gavalla from testifying on these topics, including the standard of care in the industry in terms of reporting injuries, BNSF's motion in limine is DENIED, subject to renewal in the context of trial. (Doc. 198, at 8, 18-19).

(2) BNSF's motion to prohibit Gavalla from testifying that Wooten sustained a work-related injury is GRANTED on the ground that such testimony

4

would invade the province of the jury and improperly bolster Wooten's testimony. (Doc. 198, at 10-11)

(3) BNSF's motion to prohibit Gavalla from testifying that Wooten was not injured when he reported to work on the night in question is GRANTED. (Doc. 198, at 12-13).

(4) Wooten agreed at the hearing that he does not intend to offer any opinion from Gavalla relating to medical causation. (Doc. 198, at 13). To the extent BNSF moves to prohibit Gavalla from offering opinions concerning medical causation, its motion is GRANTED. (Doc. 198, at 13).

(5) BNSF's motion to exclude Gavalla's opinion regarding the sufficiency of the handwriting samples used during BNSF's investigation into Wooten's actions is GRANTED. (Doc. 198, at 16).

(6) BNSF's motion to prohibit Gavalla from testifying based on Dr. Charles Sullivan's records that it would have been impossible for Wooten not to have been injured in a work-related incident is GRANTED. (Doc. 198, at 16).

(7) BNSF's motion to exclude Gavalla's opinion that Wooten was "honest and forthcoming" is GRANTED. (Doc. 198, at 17).

(8) BNSF's motion to prohibit Gavalla from testifying about industry standards, particularly the standard of care embodied in the FRSA statute and OSHA regulations, is DENIED, subject to renewal at trial. (Doc. 198, at 20). But

to the extent BNSF moves to preclude Gavalla from testifying that BNSF violated that standard of care here, its motion is GRANTED. (Doc. 198, at 21).

(9) BNSF's motion is GRANTED to the extent it seeks to prohibit Gavalla from testifying that Wooten was engaged in a protected activity, that BSNF knew he engaged in a protected activity, that there was a causal nexus between Wooten's injury report and his termination. (Doc. 198, at 20- 22).

(10) BNSF's motion to prohibit Gavalla from testifying that the discipline and dismissal of Wooten was a pretext for retaliation, and the type of action the discrimination provisions were intended to prevent is GRANTED. (Doc. 198, at 22-23).

(11) While Gavalla may testify generally about industry standards, BNSF's motion is GRANTED to the extent it seeks to prohibit Gavalla's opinion that BNSF was "motivated, at least in part, by a desire to achieve the BNSF ICP ('Incentive Compensation Plan') goals, which would serve to increase management bonuses." (Doc. 198, at 23).

  **B.** **Engle**

BNSF moves in limine to prohibit Wooten from introducing John David Engle, Jr.'s proposed opinion testimony as set forth in his report dated November 29, 2017. BNSF argues that Engle lacks the requisite foundation and qualifications to offer the opinions set forth in his report. BNSF moves to prohibit Engle from testifying as to (1) the sufficiency of the 3-Man Inspection Team's inspection of

BNSF 6867, and (2) the condition and function of a non-welded part on a locomotive.

Consistent with the Court's ruling from the bench at the motion hearing on May 23, 2018, BNSF's motion is DENIED. (Doc. 198, at 24-31).

### III. Motions in Limine

Only evidence that is relevant is admissible at trial. Fed. R. Evid. 402. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence." Even evidence that is relevant may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Courts have "wide discretion" in considering and ruling on motions in limine. *Trichtler v. Co. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004). For evidence to be excluded on a motion in limine, "the evidence must be inadmissible on all potential grounds." *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. 2010). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *BNSF v. Quad City*, 2010 WL 4337827 *1.

**A.     BNSF's Motions in Limine (Doc. 166)**

BNSF moves in limine to preclude Wooten from presenting evidence and argument at trial relating to the following:

(1)   *Allowing evidence of Mark Voelker's role in the reporting of loose screws on October 27, 2015.*

BNSF asks that it be able to delve into this evidence, including emails that Voelker sent to Wooten's counsel, at trial. (Doc. 198, at 32). This motion is DENIED, subject to renewal at trial (Doc. 198, at 33).

(2)   *Reference to James Pino's 23-year-old felony conviction.*

This motion is GRANTED. (Doc. 198, at 38).

(3)   *Arguments that Nancy Ahern allegedly acted dishonestly in procuring video footage from Town Pump.*

This motion is GRANTED, except to the extent that Ahern can be questioned on the form she filled out. (Doc. 198, at 33, 39-40).

(4)   *Documents obtained by Wooten's counsel from Michael Hart.*

This motion is GRANTED. (Doc. 198, at 33-34).

(5)   *Testimony of Dr. William Stratford.*

Wooten does not object to this motion, which is GRANTED. (Doc. 198, at 34).

(6)   *Testimony of Mike Smith.*

This motion is DENIED subject to renewal at trial. (Doc. 198, at 34, 40-42).

(7)   *Wooten's need for future surgery.*

This motion is DENIED subject to renewal at trial. (Doc. 198, at 35).

(8) *Wage loss and medical expenses.*

This motion is GRANTED to the extent that this evidence will not be introduced at trial, and will be addressed after trial if necessary for purposes of determining any potential offset. (Doc. 198, at 46-48).

(9) *Welded doors on locomotives other than BNSF 6867.*

Ruling on this motion is DEFERRED until the time of trial. (Doc. 198 at 44-46).

(10) *Arguments for political or punitive effect, including any reference to the size or financial holdings of a corporate party or comparisons between Wooten and BNSF or corporations.*

This motion is GRANTED, except that such evidence may be admissible if the case proceeds to a punitive damages phase. (Doc. 198, at 48-50).

(11) *All media reports regarding Wooten's termination as well as media reports of other OSHA investigations.*

This motion is GRANTED. (Doc. 198, at 51-53).

(12) *Alleged retaliatory termination, dismissal or discipline of any other employee.*
This motion is DENIED, subject to renewal at trial. (Doc. 198, at 53-54).

(13) *Any evidence or argument about Congressional intent (including any discussion of prior actions of any railroad, employer, or government entity that may have led, in whole or in part, to promulgation of § 20109) or Congressional hearing statements or testimony of any person.*

This motion is DENIED, subject to renewal at trial. (Doc. 198, at 56).

9

(14) *BSNF Railway Company's PPI index and ERP safety program.*

This motion is GRANTED. (Doc. 198, at 58).

(15) *Mention of these motions in limine or the Court's rulings thereon.*

This motion is GRANTED. (Doc. 198, at 58).

(16) *Discovery orders or discovery issues.*

This motion is GRANTED. (Doc. 198, at 58).

(17) *Testimony regarding the conduct of BNSF or its attorneys in defending this lawsuit, or any other lawsuit, including allegations of spoliation.*

This motion is DENIED, subject to renewal at trial. (Doc. 198, at 59).

(18) *The January 10, 2013, Accord between OSHA and BNSF or any negotiations regarding the same, as well as any other lawsuits or the results thereof against BNSF based on the FRSA.*

This motion is GRANTED. (Doc. 198, at 62).

(19) *Budget cuts made by BNSF.*

This motion is GRANTED to the extent that general testimony about budget cuts will be precluded. The Court may revisit this issue at trial, depending on the evidence BNSF presents with respect to the fact that Wooten called in sick before the alleged incident. (Doc. 198, at 60-61, 65).

(20) *BNSF's "corporate mindset" or "corporate culture."*

This motion is GRANTED, subject to developments at trial that may make some inquiry into BSNF procedures relevant. (Doc. 198, 66-67).

(21) *Testimony from witnesses about psychological effects of the investigations, termination or lawsuit has on Wooten or others.*

This motion is GRANTED, except to the extent that Wooten can testify about his own emotional distress. (Doc. 198, at 67).

(22) *Testimony about the after-the-fact PEPA board review.*

Ruling on this motion is deferred until the time of trial. (Doc. 198, at 69).

(23) *Reference to any railroad accidents or incidents, or inflammatory remarks such as comparing BNSF to the Klu Klux Klan or making references to "bomb trains" and other similarly inflammatory comments.*

This motion is GRANTED. (Doc. 198, at 70-71).

(24) *Any inquiry into or testimony regarding Daniel Fransen leaving his employment with BNSF.*

Ruling on this motion is deferred until the time of trial. (Doc. 198, at 73).

(25) *Mark Voelker's termination from his employment with BNSF*

Ruling on this motion is deferred until the time of trial. (Doc. 198, at 73-74).

(26) *Opinions or argument that the type or model of door latch installed on BNSF 6867 is defective in its design*

This motion is GRANTED, to the extent that Toby Hayes and Levoy Little will not be allowed to testify about design defects. The admissibility of other testimony by Hayes and Little will be resolved at the time of trial. (doc. 198, at 45-46).

B. **Plaintiff's Motions in Limine (Doc. 168)**

Wooten moves in limine to preclude BNSF from presenting evidence and argument at trial relating to the following:

(1) *Testimony from and reports produced by Brian Weaver*

Wooten's motion to exclude Mr. Weaver's possible opinion or statement that there is "no evidence" to suggest that the door handle and latch mechanism failed to function properly when Wooten operated the latch is GRANTED. (Doc. 198 at 119 and 121-22.) Wooten's own testimony constitutes evidence that the latch may not have functioned properly. And Mr. Weaver may not comment on the objective value of any particular witness's statement about the latch functioning properly. He may not declare that one witness's statement as to the functionality of the latch is more objectively accurate than Wooten's statement asserting the latch did not function. (Doc. 198 at 119-120.)

Wooten moves to exclude Mr. Weaver's opinions regarding Wooten's body kinematics as further explained during the hearing. Wooten argued about Mr. Weaver's opinions as to which direction Wooten fell while climbing the steps on the locomotive, and his opinions based on measurements of the slope of the ground. Wooten is concerned that there was no information as to whether the slope had been changed by the time the measurements were taken. The Court took this motion under advisement and defers ruling upon the motion for the presiding District Judge's consideration in the context of all the information presented at trial. (Doc. 198 at 121.)

Wooten's motion to preclude Mr. Weaver's opinions regarding the extent of Wooten's injuries is GRANTED to the extent Mr. Weaver may try to describe Wooten's actual injuries differently than the description of those injuries set forth in Wooten's medical records. (Doc. 198 at 125.) Mr. Weaver's description of Wooten's injuries shall be limited to the specific medical terminology used in Wooten's medical records to describe Wooten's injuries.

Wooten moved to exclude Mr. Weaver's opinions about whether the hex bolts or screws on the locomotive door were purposefully manipulated. Wooten argued there existed no factual or scientific evidence indicating that the bolts were purposely manipulated. And Wooten argued there is no identification of the time of the tool marks on the bolts or screws. The Court took the motion under advisement and defers ruling for the presiding District Judge's consideration upon the presentation of evidence at trial. (Doc. 130 at 169.)

Wooten moved to preclude Mr. Weaver's opinions and conclusions that, after viewing the shanty videos, Wooten's conduct shown in the videos reflect that he had an injury at that time. Wooten argues there is nothing in the videos that would allow Mr. Wearver to say an injury to Wooten is shown by the video. Based upon the parties' exchange of information during the hearing, Wooten agreed to review the videos he obtained from BNSF and reassess the merits of his motion. Therefore, Wooten's motion is deemed withdrawn and, therefore, DENIED on that basis. (Doc. 198 at 140-42.) Nonetheless, as stated during the hearing, the Court

concludes that the referenced videos themselves are the best evidence of whether they show that Wooten had an injury at the time of the videos. Mr. Weaver may not opine, for example, that the videos show that Wooten was purposely avoiding use of his right hand and, therefore, he had an injury to his right hand. Mr. Weaver may not interpret for the jury what is shown on the videos. Thus, Wooten's motion is GRANTED in that respect. (Doc. 198 at 142.)

> (2) *Reference to, exhibiting of, use of, or referring to in any manner whatsoever, Wooten's Lay-Off Sick on the morning of July 29, 2015.*

Wooten's motion is GRANTED to the extent that BNSF is precluded from making any reference to, or use of, evidence establishing that Wooten laid off sick either on the morning of July 29, 2015, or at 5:28 p.m. on July 29, 2015, prior to the incident that is the subject of this action. (Doc. 198 at 104-05.) But to the extent Wooten seeks to exclude evidence of his activities the evening of July 29, 2015, spending time in bars with friends, the motion is DENIED subject to renewal if Wooten can affirmatively establish the evidence is irrelevant. (Doc. 198 at 106-07.)

> (3) *Reference to, exhibiting of, use of, or referring to in any manner whatsoever, Wooten's consensual sexual encounter with an unknown woman on the night of July 29, 2015, and the abrasion to his left arm sustained during that encounter.*

This motion is DENIED, subject to renewal in the context of trial. (Doc. 198 at 142-52).

(4) *Testimony and/or evidence that Wooten has retained out-of-state counsel.*

Wooten has withdrawn his motion to exclude evidence establishing he retained out-of-state counsel. (Doc. 198 at 108.) Therefore, the motion is DENIED as moot.

(5) *Testimony and/or evidence of a bar fight that took place on or about July 29, 2015.*

Wooten's motion to exclude evidence suggesting he was in involved in a fight at a bar on July 29, 2015, is DENIED subject to his right to renew the motion at trial. (Doc. 198 at 108.)

(6) *Testimony and/or evidence that BNSF's investigation and subsequent termination of Wooten's employment was conducted pursuant to a collective bargaining agreement.*

Wooten's motion to exclude testimony or evidence that BNSF conducted its investigation of Wooten's injury claim, and subsequently terminated Wooten, all in accordance with the collective bargaining agreement is GRANTED. (Doc. 198 at 154-55.) But, as noted at the hearing, if at trial Wooten seeks to cast prejudicial light upon BNSF with respect to the manner and procedure of its investigation, then BNSF may bring up the issue of the collective bargaining agreement with the presiding District Judge and he may decide the evidence of the agreement is relevant and admissible. (Doc. 198 at 156.)

(7) *Testimony or argument that Wooten's motive is to make or get money from BNSF, or that any award that Wooten may receive would result in higher costs to the public through rate or insurance increases.*

Wooten has withdrawn his motion seeking to exclude possible evidence of his motive to obtain money, and evidence that a compensatory award granted to Wooten in this case would increase rates and insurance premiums. (Doc. 198 at 109.) Therefore, the motion is DENIED as moot.

(8) *Reference to BNSF as a "family" or "good corporate citizen."*

Wooten clarified at the hearing that he is asking the Court to preclude BNSF's expert witnesses from testifying that BNSF did not violate a particular FELA requirement or regulation. Therefore, Wooten's motion, as clarified, is GRANTED. (Doc. 198 at 158-59.)

(9) *Testimony or argument that Michael Hart may have misappropriated certain documents from BNSF.*

The Court has granted BNSF's motion to preclude Wooten from using documents obtained from Michael Hart. Therefore, Wooten's motion precluding BNSF from suggesting Hart may have misappropriated documents from BNSF is unnecessary and DENIED on that basis. (Doc. 198 at 110.) BNSF will not be addressing the source of Hart's documents.

## IV. Conclusion

IT IS ORDERED that the parties' motions in limine to exclude or limit expert testimony and other evidence (docs. 151, 164, 166 & 168) are GRANTED IN PART and DENIED IN PART as set forth above.

DATED this 1st day of June, 2018.

_____
Jeremiah C. Lynch
United States Magistrate Judge