**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 22 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ZACHARY WOOTEN,<br><br>    Plaintiff-Appellee,<br><br> v.<br><br>BNSF RAILWAY COMPANY, A Delaware Corporation,<br><br>    Defendant-Appellant. | No. 19-35431<br><br>D.C. No. 9:16-cv-00139-DLC<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted May 6, 2020
Portland, Oregon

Before: WATFORD and HURWITZ, Circuit Judges, and PREGERSON,** District Judge.

Zachary Wooten worked as a conductor for BNSF Railway Company until September 2015, when he was terminated after reporting a work-related injury. In this action, Wooten claims that the firing violated the Federal Railroad Safety Act

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*     The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

("FRSA"), Federal Employers' Liability Act ("FELA"), and Locomotive Inspection Act ("LIA"). After an eleven-day trial, the jury returned a verdict in Wooten's favor on the FRSA and FELA claims, and in BNSF's favor on the LIA claim. The district court entered judgment for Wooten awarding compensatory damages, lost wages, punitive damages, and front pay. This appeal followed.

1. The district court did not abuse its discretion by denying BNSF's motion to bifurcate the FRSA and FELA claims. "Rule 42(b) merely allows, but does not require, a trial court to bifurcate cases 'in furtherance of convenience or to avoid prejudice.'" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis omitted) (quoting Fed. R. Civ. P. 42(b)). Here, the district court determined that convenience and judicial economy weighed in favor of trying the claims together—the claims involved overlapping evidence and any potential for prejudice was reduced or eliminated by limiting instructions. Such a determination was not "beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000).

2. The district court did not abuse its discretion by declining to give BNSF's proposed honest belief and business judgment instructions. "Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading." *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014) (quoting *Peralta v. Dillard*, 744 F.3d

1076, 1082 (9th Cir. 2014) (en banc)).  The district court properly instructed the jury on Wooten's burden of proof under the FRSA and on BNSF's burden of proof on its affirmative defense.  The district court also adequately instructed the jury on the definition of a contributing factor: "A 'contributing factor' is any factor which, alone or in connection with other factors, affected the outcome of BNSF's personnel decision. . . . Wooten is not required to conclusively demonstrate BNSF's retaliatory motive but he is required to show that retaliation played at least some role in BNSF's decision."  See Frost v. BNSF Ry. Co., 914 F.3d 1189, 1195 (9th Cir. 2019) (approving such a definition of contributing factor).  Because the district court's instructions correctly stated the law on the FRSA claim, BNSF's proposed honest belief and business judgment instructions were not necessary.

**3.**  The district court did not abuse its discretion by declining to give BNSF's proposed decision-maker knowledge instruction on the FRSA claim and a *Kolstad* instruction on punitive damages.  See Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999).  BNSF did not present any evidence, argue before the jury, or contend on appeal that its decision-makers were unaware of Wooten's protected activity.  Even if decision-maker knowledge is required under the FRSA, any error was harmless—there was ample evidence that BNSF's decision-makers were aware of Wooten's protected activity.  See Wilkerson, 772 F.3d at 838 ("[I]f any error relating to the jury instructions was harmless, we do not reverse.").

Similarly, we need not decide whether a *Kolstad* instruction on punitive damages is appropriate in a FRSA action. *See Kolstad*, 527 U.S. at 545. Sufficiently senior-level officials at multiple layers, including the Regional Vice-President, the Montana Division General Manager, a Director of Labor Relations, and the Director of Administration for the Montana Division, reviewed and approved Wooten's dismissal. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 516-17 (9th Cir. 2000).

**4.** We need not decide whether the district court erred in admitting evidence of comparators. Even if the district court erred in admitting some of the evidence, the error did not result in any prejudice. *See EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997).

**5.** The district court did not abuse its discretion in awarding Wooten front pay under the FRSA. We review the front pay award for an abuse of discretion and the factual findings related to the front pay award for clear error. *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1014 n.4 (9th Cir. 2010). "When we conduct clear error review, we must not reverse as long as the district court's findings are plausible in light of the record viewed in its entirety." *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1155 (9th Cir. 1999) (cleaned up).

"'[F]ront pay' in lieu of reinstatement . . . [returns] the aggrieved party to the economic situation he would have enjoyed but for the defendant's illegal

conduct." *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1987). "[F]ront pay is an award of future lost earnings to make a victim of discrimination whole." *Id.* Of course, "the plaintiff's duty to mitigate must serve as a control on front pay damage awards," and it is for that reason that our circuit and others have emphasized that front pay is "temporary in nature." *Id.* at 1347. Notwithstanding the temporary nature of front pay, we have upheld front pay awards for extended periods where the facts have justified such an award to make a plaintiff whole. *See, e.g., Gotthardt*, 191 F.3d at 1157 (affirming a front pay award covering approximately eleven years); *see also Padilla v. Metro-N. Commuter R.R.*, 92 F.3d 117, 126 (2d Cir. 1996) (affirming a front pay award covering more than twenty years).

  Upon careful review, we conclude that the front pay award, although for an extended period, does not constitute an abuse of discretion based on the highly unusual, fact specific record before the court. Wooten had a limited education and was from a small railroad town. He came from a railroad family—his grandfather retired from the railroad—and worked at one of the best paying jobs in the area. Notably, Wooten acquired at BNSF a specific set of skills that were related only to the transportation industry. After being dismissed in violation of the FRSA, Wooten was faced with an essentially non-existent job market for comparable paying jobs.

Indeed, BNSF's own expert confirmed that the job market was highly unusual. The company's vocational expert testified that Wooten had a highly specialized set of skills derived from his work at BNSF; that the most he could make working at another railroad would be $60,000 (compared to the approximately $100,000 he had been making at BNSF); that it was unclear whether another railroad would even be willing to hire him; and that his insurance job was probably the best-paying job he could otherwise hope to get. What's more, it appears that the seniority Wooten had acquired at BNSF ensured that he would actually get put on jobs with that employer, while his lack of seniority at any other railroad might have rendered him unable to earn a full-time salary. BNSF did not show that Wooten would be able to find a comparable job at any point over his expected working career. Moreover, given the salary Wooten earned at BNSF and the benefits associated with the seniority that he enjoyed, Wooten would not have had any economically rational reason to ever leave BNSF, making it far from speculative to find that he would have stayed at the company until his retirement.

In the vast majority of cases, a plaintiff will be able to find a comparable job within a few years, and for that reason, only a few years of front pay will be sufficient to bridge the gap in earnings. But this is not a typical situation. The district court's findings supporting the front pay award were not clearly erroneous, and the award was not an abuse of discretion.

**6.** The district court did not abuse its discretion in concluding that the jury's emotional distress award was supported by the evidence. "Generally, a jury's award of damages is entitled to great deference, and should be upheld unless it is 'clearly not supported by the evidence' or 'only based on speculation or guesswork.'" *In re First All. Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986)). The jury's award was supported by Wooten's testimony regarding the emotional impact he experienced after dismissal. Objective evidence is not required to support an emotional distress award. *See Passantino*, 212 F.3d at 513.

**AFFIRMED.**